**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| CWO3 OAKLEY DEAN BALDWIN, USCGR, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION AND RECOMMENDATION** |
| CITY OF GREENSBORO, a North Carolina municipality, MITCHELL JOHNSON, in his official and personal capacities, and JERYL W. COVINGTON, in her official and personal capacities, | ) ) ) ) ) ) ) ) | 1:09CV742 |
| Defendants. | ) ) | |

This matter is before the court on a motion to dismiss by Defendants Mitchell Johnson and Jeryl Covington (docket no. 10). Plaintiff has responded in opposition to the motion, and, in this posture, the matter is ripe for disposition. Furthermore, the parties have not consented to the jurisdiction of the magistrate judge. Thus, the motion to dismiss must be dealt with by way of recommendation. For the reasons set forth below, it will be recommended that the court deny Defendants' motion to dismiss.

**I. Background**

Plaintiff alleges that Defendant City of Greensboro ("City") and the individual defendants Mitchell Johnson and Jeryl Covington violated 38 U.S.C. §§ 4311 and

4312 of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA") by terminating Plaintiff's employment in February 2003 after he informed the City of his impending recall duty to military service. Before he was terminated, Plaintiff signed a general release form (the "Release"), which purported to bar Plaintiff from bringing any claims against the City due to the termination of his employment. On September 29, 2009, Plaintiff filed this lawsuit against Defendants, in which he alleges that Defendants violated his USERRA rights.[1] Defendants Johnson and Covington have filed a motion to dismiss the claims against them.

## II. Facts

The following facts are taken as true for the purpose of the pending motion to dismiss:

Plaintiff's Notification of Recall to Active Duty Service with the Coast Guard

In February 2001, Defendant City of Greensboro hired Plaintiff to perform solid waste disposal and environmental services. Plaintiff's job title was Solid Waste

---

[1] Plaintiff filed this lawsuit in 2009, more than six years after his employment ended with the City. When USERRA was originally passed in 1994, the statute did not include an express statute of limitations. In amendments to USERRA in the Veterans' Benefits Improvement Act of 2008, Congress included an express statement that there is no statute of limitations for filing a USERRA claim. *See* 38 U.S.C. § 4327(b) ("If any person seeks to file any complaint or claim . . . alleging a violation of this chapter, there shall be no limit on the period for filing the complaint or claim."). Thus, Plaintiff does not appear to be facing a statute of limitations bar. *But see Middleton v. City of Chicago*, 578 F.3d 655, 665 (7th Cir. 2009) (concluding that the 2008 amendments did not retroactively apply to the plaintiff's claims, and finding that the claims were barred under the federal, four-year "catch-all" statute of limitations, *see* 28 U.S.C. § 1658). Indeed, Defendants have not raised the statute of limitations bar as an affirmative defense, and they also have not argued the equitable doctrine of laches as a bar to Plaintiff's claims.

Division Manager ("Waste Manager"). Plaintiff's immediate supervisor was Defendant Covington, Director of Environmental Services, who in turn reported to Defendant Johnson, Assistant City Manager. At the time of his employment, Plaintiff placed the City on notice of his military obligations in the United States Coast Guard Reserve. From February 2001 to August 2002, Plaintiff's job performance was exemplary and he received very positive reports from the City. In August 2002, Plaintiff reported to the City that he received notification of an imminent recall to active duty service. At that time, Plaintiff's supervisor Covington began harassing Plaintiff and asked Plaintiff on numerous occasions how long Plaintiff would be away on active duty military service. Plaintiff subsequently reported the harassment by Covington.

Termination of Plaintiff's Employment

On December 20, 2002, Plaintiff and Defendant Johnson met with each other, ostensibly to discuss the harassment of Plaintiff by Covington. At the December 20 meeting, Defendant Johnson informed Plaintiff that the City was eliminating Plaintiff's job position due to a reduction-in-force ("RIF"), and that Plaintiff's position would be eliminated effective upon Plaintiff's report to active duty. Defendant Johnson initially told Plaintiff that the RIF was due to "lack of funding." Thereafter, in a follow-up letter to Plaintiff dated December 23, 2002, Defendant Johnson stated that the RIF was due to a restructuring. Also on December 23, 2002, the City held a meeting with Plaintiff and all superintendents under Plaintiff's management, in which

Covington informed everyone that Plaintiff's position was being eliminated because of a RIF caused by a "funding issue."

The Release Signed by Plaintiff

Before his termination date, Plaintiff called Defendant Johnson on several occasions in an attempt to obtain his two weeks of military pay before his departure. Defendant Johnson advised Plaintiff that he had to sign a release form before he could receive any monies owed to him under and by virtue of his employment. On January 20, 2003, Plaintiff received written orders to report to active duty with the Coast Guard. On January 23, 2003, Plaintiff signed a release form, which provided in relevant part: "Due to the position of Waste Manager being eliminated and the subsequent active duty military call-up of [Plaintiff] (effective January 25, 2003) during the period of his reduction in force notification period . . . . . . . [Plaintiff] accepts the above payment in lieu of continued employment with the City of Greensboro following his release from active duty military service [which] begins effective January 26, 2003." (*See* Ex. C. to Compl.) The Release Form provides that the payments to be made in lieu of continued employment included accumulated leave pay, pay for military training time, and severance pay. (*Id.*) The Release Form further states that Plaintiff would remain on the City's payroll in "leave without pay" status from January 25 to February 15 "and will therefore have insurance coverage for him and covered dependents through February, 2003." (*Id.*) Finally, the Release

Form states that "[Plaintiff] agrees that this arrangement was made at his request and waives his right to any claims against the City of Greensboro." (*Id.*)

Plaintiff's Allegations that Defendant City Terminated Plaintiff's Employment Because of His Recall to Military Service

In support of his USERRA claim, Plaintiff alleges that the City eliminated his job position because of his recall to military service and not because of any purported RIF by the City. The complaint contains numerous factual allegations supporting Plaintiff's argument that the City's explanation for eliminating Plaintiff's position was merely pretextual. For example, Plaintiff alleges that in December 2002, there had not been any decrease in funding that was designated to affect the Solid Waste Service Department for the City. Plaintiff further alleges that on June 30, 2002, the City budget clearly showed that Plaintiff's position had been fully funded through June 30, 2003. Plaintiff further alleges, upon information and belief, that in Plaintiff's entire division of 166 employees, his position was the only position terminated as a result of the purported RIF; that he was the only RIF in the entire Public Works Department of over 270 employees; and that he was the only person in the Public Works Department who was being recalled to active duty military service at the time of these events.

Plaintiff further alleges that the City failed to state a valid purpose for the purported RIF as required by City policy; that the City did not follow its own protocol for executing a RIF in that the City's RIF policy required that all known City job

vacancies be eliminated before a RIF; and that the City further ignored its own RIF policy by failing to consider Plaintiff's past performance evaluations. Plaintiff alleges that, given his excellent performance evaluations and qualifications, the City should have given Plaintiff "preferred placement" with other job openings within the City.

## III. Standard of Review

 Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

In ruling on a motion to dismiss for failure to state a claim, it must be recalled that the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the action. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 887 F. Supp. 811, 813 (M.D.N.C. 1995). At this stage of the litigation, a plaintiff's well-pleaded allegations are taken as true, and the complaint, including all reasonable inferences therefrom, are liberally construed in the plaintiff's favor. *McNair v. Lend Lease Trucks, Inc.*, 95 F.3d 325, 327 (4th Cir. 1996).

The duty of fair notice under Rule 8(a), however, requires the plaintiff to allege, at a minimum, the necessary facts and grounds that will support his right to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme Court has instructed, although detailed facts are not required, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal citation omitted). *See also Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)

(clarifying *Twombly*).  With these principles in mind, the court now turns to the motion to dismiss.

## IV.  Analysis

### Claims Against Defendants Johnson and Covington in Their Official Capacities

Defendants first contend that Plaintiff's claims against Defendants Johnson and Covington in their "official" capacities should be dismissed.  I agree.  It is well established that suits against individuals in their official capacities are actually suits against the governmental entity itself.  *Revene v. Charles County Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989); *Sheaffer v. County of Chatham*, 337 F. Supp. 2d 709, 721 (M.D.N.C. 2004) ("Because official capacity suits are essentially suits against the entity itself, they may be dismissed, where, as here, the governmental entity is sued.").  Here, Defendants Johnson and Covington are employees of Defendant City of Greensboro; thus, the claims against them in their official capacities are redundant.

### Claims Against Defendants Johnson and Covington in Their Individual Capacities

As noted, Plaintiff alleges claims against the moving Defendants Johnson and Covington in their individual capacities for violations of 38 U.S.C. §§ 4311 and 4312 of USERRA.  Section 4311 generally prohibits discrimination by employers against persons for serving in the military.  *See* 38 U.S.C. § 4311.  Section 4312 generally provides that any person who takes a leave of absence from their employment

because of military service duties is entitled to reemployment rights and benefits. *See* 38 U.S.C. § 4312. The moving Defendants Johnson and Covington contend that the claims against them in their "individual" capacities should be dismissed because the complaint fails to sufficiently allege facts showing that Defendants Johnson and Covington are "employers" within the meaning of USERRA.

USERRA imposes liability upon "employers" who, among other things, deny "initial employment, reemployment, retention in employment, promotion, or any benefit of employment" because of a person's membership in the military. *See* 38 U.S.C. § 4311. USERRA defines "employer" as "any person, institution, organization, or other entity that pays salary or wages for work performed or that has control over employment opportunities, including a person . . . to whom the employer has delegated the performance of employment-related responsibilities." *Id.* § 4303(4)(A)(I). The regulations accompanying USERRA state that an employer means "any person, institution, organization, or other entity that pays salary or wages for work performed, *or that has control over employment opportunities* . . . ." 20 C.F.R. § 1002.5(d)(1).[2] The regulations further clarify, however, that a person who performs "purely ministerial" duties, such as maintaining personnel files, is not an "employer" within the meaning of USERRA as long as the person has no direct influence on employment-related decisions. *See id.* § 1002.5(d)(1)(I).

---

[2] Thus, the term "employer" is more broadly defined in USERRA than in the Americans with Disabilities Act, Title VII, or the Age Discrimination in Employment Act.

I find that the motion to dismiss should be denied as to Defendants Johnson and Covington in their individual capacities. Defendants argue in their brief that Plaintiff has not alleged that either Defendant Johnson or Covington had the final authority to hire or fire him and that this factor is dispositive in determining whether Defendants Covington and Johnson were employers within the meaning of USERRA. Defendants note that Plaintiff alleges that he was "recruited and lured by the City of Greensboro," but he does not allege that Defendants Johnson or Covington had any role in Plaintiff's hiring. Defendants further note that, according to Plaintiff's own allegations, under the City's personnel policy, the City Manager–not Johnson or Covington–had the authority to fire Plaintiff under a RIF.

I do not agree with Defendants. Defendants contend that a person must have the ultimate authority to hire or fire to be held liable an "employer" under USERRA, but the plain language of the statute and the accompanying regulations indicates that the term "employer" is broader than as suggested by Defendants. Here, the complaint alleges that Defendants Covington and Johnson were in Plaintiff's supervisory chain of command, were involved in preparing Plaintiff's performance evaluations, were involved in Plaintiff's daily supervision, and were involved in the "pretextual" RIF that caused Plaintiff's termination. At least on a motion to dismiss, these facts sufficiently allege that Defendants Covington and Johnson were employers within the meaning of USERRA. Therefore, the motion to dismiss should be denied as to Defendants Covington and Johnson in their individual capacities.

**Defendants' Contention that the Release Bars Plaintiff's Claims**

In their motion to dismiss, the moving Defendants next contend that the release signed by Plaintiff when his employment ended with the City bars him from now bringing a USERRA claim.[3]  Plaintiff, on the other hand, contends that he has not waived his rights to bring a USERRA claim for several reasons.  Plaintiff first cites to the express language of USERRA, which provides in pertinent part:

> (a) Nothing in this chapter shall supersede, nullify or diminish any Federal or State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter.
>
> (b) This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

38 U.S.C. § 4302.  Plaintiff contends that the above-cited language clearly provides that Plaintiff is not precluded from bringing a USERRA claim.  In other words, Plaintiff contends that the language of Section 4302 supersedes the release signed by Plaintiff.  Defendants counter that the release is valid because, despite the

---

[3]  I note that the release specifically releases any claims by Plaintiff against "the City"; it does not purport to release any claims against the individual Defendants Johnson or Covington.  Although the same counsel is representing the City and Defendants Johnson and Covington, the City has not joined in the motion to dismiss.  Furthermore, Defendants Johnson and Covington do not address the fact that the release does not specifically state that any claims were waived as to them.  Because the undersigned is recommending that the court deny the motion to dismiss, the parties can address this issue at a later date.

language of Section 4302, a settlement agreement can bar USERRA claims based on claims that accrued before the agreement was signed.[4]  *See Jolley v. Dep't of Hous. & Urban Dev.*, 299 Fed. Appx. 966, 969 (Fed. Cir. 2008) (holding that a settlement agreement precluded the plaintiff from raising claims that had accrued before the settlement agreement was signed, notwithstanding the language of Section 4302); *see also generally Wysocki v. Int'l Bus. Machs. Corp.*, 607 F.3d 1102, 1108 (6th Cir. 2010) (holding that the language of Section 4302 did not supersede a settlement agreement because the plaintiff received valuable consideration for his release of his rights under USERRA).

Plaintiff also contends that the release is simply not enforceable for other reasons, and that dismissal is not appropriate at this stage in the proceedings. Plaintiff notes that he has alleged in the complaint that he signed the release under duress.  Plaintiff contends that since the court must address the totality of the circumstances leading up to the signing of the release to determine whether Plaintiff signed it under duress, his claim should not be dismissed.  Plaintiff further contends that the release is unenforceable for another reason.  According to Plaintiff, the complaint makes clear that Plaintiff has alleged that the monies paid under the release were monies owed to him already by virtue of his employment with the

---

[4]  Defendants contend, alternatively, that the specific language of the release reveals that Plaintiff was not terminated but, instead, accepted payment "in lieu of continued employment" with the City.  This argument fails, as the complaint clearly alleges that Plaintiff left his employment because he was told that his job was being eliminated due to a RIF.

City–specifically his accumulated leave, military training time, and severance pay. As for the additional language in the release in which the City agreed to keep Plaintiff on the payroll for "insurance coverage for him and his covered dependents through February, 2003," Plaintiff contends that the City already had an obligation to offer Plaintiff COBRA benefits at the time of his termination.  Plaintiff contends that the release prepared by the City is therefore nothing more than a recitation of the City's obligations under Plaintiff's employment contract, as well as obligations imposed by law.  Plaintiff contends, therefore, that the release lacks adequate consideration and is void.

Here, I agree with Plaintiff that, due to Plaintiff's allegations of duress, dismissal is simply not appropriate at this stage of the proceedings.  The court need not, therefore, address Plaintiff's additional arguments that the release was void for lack of adequate consideration and that the express language of Section 4302 supersedes the release.

## V. Conclusion

For the reasons stated above, **IT IS RECOMMENDED** that the court **DENY** the motion to dismiss (docket no. 10) as to Covington and Johnson in their individual capacities. To the extent, however, that Covington and Johnson are being sued in their official capacities, the claims against them are really against the City. In sum, the motion to dismiss should be **DENIED**.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
August 12, 2010