# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CWO3 OAKLEY DEAN BALDWIN, USCGR, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:09CV742 |
| CITY OF GREENSBORO, a North Carolina municipality, MITCHELL JOHNSON, in his personal capacity, and JERYL W. COVINGTON, in her personal capacity, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the undersigned United States Magistrate Judge for a recommended ruling on (1) Defendants' Motion for Summary Judgment (Docket Entry 50); (2) Plaintiff's Motion to Compel Discovery (Docket Entry 47); and (3) Defendants' Motion to Strike (Docket Entry 56). (See Docket Entries dated Sept. 30, 2009 and Oct. 20, 2011 (assigning case to undersigned Magistrate Judge and designating case as subject to handling pursuant to this

Court's Amended Standing Order No. 30).)[1]  For the reasons that follow, Defendants' Motion for Summary Judgment should be granted, and Plaintiff's Motion to Compel Discovery and Defendants' Motion to Strike should be denied as moot.

<u>Factual Background</u>

Plaintiff commenced the instant action under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), Pub. L. No. 103-353, 108 Stat. 3149 (codified as amended at 38 U.S.C. §§ 4301 <u>et</u> <u>seq.</u>) against Defendants the City of Greensboro, Mitchell Johnson ("Johnson"), and Jeryl W. Covington ("Covington") for violations of Sections 4311 and 4312 based on termination of Plaintiff's employment motivated in whole or in part by Plaintiff's imminent recall to active military service.  (<u>See</u> Docket Entry 38.)

Plaintiff's First Amended Complaint alleges that Plaintiff, a Reservist with the United States Coast Guard (<u>see</u> <u>id.</u> ¶¶ 8, 10), took the position of Solid Waste Division Manager with the City of Greensboro in February 2001 (<u>see</u> <u>id.</u> ¶ 12).  In this position,

---

[1] Under said Standing Order, "[t]he magistrate judge to whom the case is assigned will rule or make recommendations upon all motions, both non-dispositive and dispositive."  M.D.N.C. Amended Standing Order No. 30, ¶ 2; <u>see also</u> M.D.N.C. L.R. 72.2 ("Duties and cases may be assigned or referred to a Magistrate Judge . . . by the clerk in compliance with standing orders . . . .").) Because the undersigned views the need for adjudication of Plaintiff's Motion to Compel Discovery (Docket Entry 47) and Defendants' Motion to Strike (Docket Entry 56) as necessarily dependent on the Court's ruling on Defendant's Motion for Summary Judgment, the undersigned issues a Recommendation, as opposed to an Order, with respect to all referred motions.

Plaintiff reported directly to Defendant Covington, Director of Environmental Services, who reported in turn to Defendant Johnson, a Greensboro Assistant City Manager. (See id. ¶ 14.) According to the First Amended Complaint, until August 2002, Plaintiff garnered positive reviews regarding his performance (see id. ¶ 15), including an evaluation from Defendant Covington which noted that Plaintiff had "exceeded the expectations for a new employee filling the role of Manager within a traditional operation" (id. ¶ 19; see also Docket Entry 55-3 at 2).

In August 2002, Plaintiff first received oral notification from the United States Coast Guard that he would likely be called to active duty in the immediate future. (Docket Entry 38, ¶ 17.) Plaintiff allegedly notified persons both above and below him in his chain of command, including Defendant Covington, of that fact. (Id. ¶ 18.) Plaintiff's First Amended Complaint also alleges that this issue was addressed in a meeting "involving numerous Superintendents and Defendant Covington" during the same time period. (Id.)

According to Plaintiff's First Amended Complaint, Plaintiff then became a target of harassment from his chain of command, including from Defendants Johnson and Covington. (Id. ¶ 21.) On more than one occasion, Defendant Covington allegedly asked Plaintiff "How long will you be gone on active duty?" (Id.) Moreover, Plaintiff's First Amended Complaint asserts that he

-3-

"fought numerous battles with Defendant Covington, who attempted at every point to undermine his authority, criticize him in front of his employees, and demoralize him by her abusive actions." (<u>Id.</u> ¶ 23.)  As a result, Plaintiff allegedly sought a meeting with Defendant Johnson, which eventually occurred on December 20, 2002. (<u>Id.</u> ¶ 24.)

Despite Plaintiff's asserted belief that said meeting was arranged in order to discuss Plaintiff's complaints against Defendant Covington, at that meeting, Defendant Johnson purportedly informed Plaintiff that the City of Greensboro was undergoing a reduction in force and Plaintiff's position was being eliminated. (<u>Id.</u> ¶ 26.)  Plaintiff's First Amended Complaint alleges that the reduction in force was "pretextual" and that Defendants "decided to terminate [Plaintiff] because of his obligations with the military and their concerns about replacing him during that interim." (<u>Id.</u> ¶ 29.)

In support of this allegation, Plaintiff's First Amended Complaint asserts that: the City of Greensboro failed to follow its internal personnel policy with respect to a reduction in force (<u>id.</u> ¶ 29(G)); there in fact was no reduction in funding (<u>id.</u> ¶ 29(H)); of the 156 employees in Plaintiff's division, Plaintiff's position was the only position terminated (<u>id.</u> ¶ 29(P)); moreover, Plaintiff was the only reduction in force in the entire Public Works Department of over 270 employees (<u>id.</u> ¶ 28(Q)); and Plaintiff was

the only person in the Public Works Department recalled to active military duty during the relevant time period (id. ¶ 28(R)). Plaintiff's First Amended Complaint further alleges that, at the time of his termination, the City of Greensboro owed him money, that, in order to receive said money, Plaintiff was forced to sign a release (the "Release"), and that the Release specifically noted: "'Due to the position of Waste Manager being eliminated and the subsequent active duty military call-up of Mr. Oakley D. Baldwin (effective January 25, 2003) during the period of his reduction in force notification period . . . Mr. Baldwin accepts the above payment in lieu of continued employment with the City of Greensboro following his release from active duty military service that begins effective January 25, 2003.'" (Id., ¶¶ 29(N), (O); see also Docket Entry 1-4, Ex. C.)

Based on the foregoing, Plaintiff's First Amended Complaint contends that Defendants' actions (1) "violated Section 4311 of USERRA by failing to retain [Plaintiff] in the employment of the City of Greensboro in that Defendants' termination of [Plaintiff]'s employment was motivated, in whole or in part, by [Plaintiff]'s membership in the United States Coast Guard Reserve, and his obligated service on active duty in the United States Coast Guard Reserve" (Docket Entry 38, ¶ 47) or (2) "[i]n the alternative, . . . violated Section 4312 of USERRA [sic] failing to reemploy [Plaintiff] in the employment of the City of Greensboro, motivated,

-5-

in whole or in part, by [Plaintiff]'s membership in the United States Coast Guard Reserve, and his obligated service on active duty in the United States Coast Guard Reserve" (id. ¶ 51).

Procedural Background

Plaintiff filed his original Complaint on September 29, 2009. (See Docket Entry 1.) Defendants Johnson and Covington thereafter moved to "dismiss [P]laintiff's claims against them in their official and individual capacities with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure." (Docket Entry 10 at 1.) United States Magistrate Judge Wallace W. Dixon recommended that the Court dismiss the claims against Defendants Johnson and Covington in their official capacities as redundant to Plaintiff's claims against the City of Greensboro, but otherwise deny Defendants' motion. (See Docket Entry 18 at 13.) Magistrate Judge Dixon also noted in a footnote that, although Plaintiff's employment ended more than six years before Plaintiff filed the instant action, "Defendants have not raised the statute of limitations bar as an affirmative defense." (Id. at 2 n.1.) Moreover, he stated:

> In amendments to USERRA in the Veterans' Benefits Improvement Act of 2008, Congress included an express statement that there is no statute of limitations for filing a USERRA claim. See 38 U.S.C. § 4327(b) ("If any person seeks to file any complaint or claim . . . alleging a violation of this chapter, there shall be no limit on the period for filing the complaint or claim."). Thus, Plaintiff does not appear to be facing a statute of limitations bar. But see Middleton v. City of Chicago,

-6-

> 578 F.3d 655, 665 (7th Cir. 2009) (concluding that the
> 2008 amendments did not retroactively apply to the
> plaintiff's claims, and finding that the claims were
> barred under the federal, four-year "catch-all" statute
> of limitations, <u>see</u> 28 U.S.C. § 1658).

(<u>Id.</u>)

Defendants Johnson and Covington objected to Magistrate Judge Dixon's Recommendation, including specifically to the conclusions regarding the effect of the statute of limitations on the instant action (Docket Entry 20 at 1-2), and filed a supporting brief, addressing, for the first time, the statute of limitations issue at length (Docket Entry 21 at 4-7). Plaintiff responded, also addressing the statute of limitations for the first time and devoting a substantial portion of his brief to that issue. (<u>See</u> Docket Entry 25 at 5-19.) Defendants Johnson and Covington thereafter sought leave of the Court to file a reply brief explaining why the Court should not consider certain documents Plaintiff submitted in support of his contentions regarding application of the statute of limitations. (<u>See</u> Docket Entry 26.)

The Court, by way of United States District Judge William L. Osteen, Jr., then issued an Order adopting Magistrate Judge Dixon's Recommendation with the exception of its discussion of the statute of limitations issue. (<u>See</u> Docket Entry 27 at 7.) Judge Osteen noted that the City of Greensboro had not yet had the opportunity to address the statute of limitations issue, and, furthermore, that consideration of the statute of limitations issue might require

conversion of the motion to dismiss into a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. (Id. at 4-5.) Accordingly, Judge Osteen ruled that "it would be premature to resolve any statute of limitations issue at this time." (Id. at 5.)

Plaintiff thereafter filed his First Amended Complaint (see Docket Entry 38), to which Defendants filed an Answer (Docket Entry 44) formally asserting the statute of limitations as an affirmative defense (see id. at 6). Defendants Johnson, Covington and the City of Greensboro have now filed Defendants' Motion for Summary Judgment (Docket Entry 50) in which they reassert that the applicable statute of limitations bars Plaintiff's claims (Docket Entry 51 at 6-10). Defendants also argue that the Court should dismiss the instant action because (1) Plaintiff's claims are barred by laches (see id. at 10); (2) Plaintiff gave up his claims by signing the Release (see id. at 11-13); (3) Plaintiff's military status was not a motivating factor in the elimination of Plaintiff's position (see id. at 13-18); (4) Defendant Covington, in particular, did not participate in eliminating Plaintiff's position (see id. at 18); (5) Plaintiff cannot support a claim under 38 U.S.C. § 4312 because Plaintiff did not reapply for employment within 90 days of his return from active duty (see id. at 18-19); and (6) Plaintiff's damages are speculative (see id. at 19-20).

<u>Motion for Summary Judgment</u>

I.    <u>Standard</u>

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). The Court must view the evidence and any reasonable inferences therefrom in a light most favorable to the non-moving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

The moving party may discharge its burden by identifying an absence of evidence to support the non-moving party's case. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). The non-moving party must then set forth "specific facts showing that there is a *genuine issue for trial*." <u>Matsushita Elec. Indus.</u>, 475 U.S. at 586-87 (citation omitted) (emphasis in original). The non-moving party must convince the Court that evidence exists upon which a finder of fact could properly return a verdict in favor of the non-moving party. <u>Anderson</u>, 477 U.S. at 252 (citation omitted); <u>see also</u> <u>Francis v. Booz, Allen & Hamilton, Inc.</u>, 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to

defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

II. <u>Discussion</u>

The undersigned first addresses the threshold issue of whether the applicable statute of limitations, if any, bars Plaintiff's claims. Defendants argue that the four-year "catch-all" statute of limitations contained in 28 U.S.C. § 1658 applies to Plaintiff's claims and therefore, because Plaintiff's position was eliminated more than six years before Plaintiff filed the instant action, his claims are time-barred. (See Docket Entry 51 at 8.) Plaintiff presents a number of arguments in response, contending: (1) the history of USERRA makes it clear that Congress intended that a claim brought under its provisions be free from any statute of limitations (see Docket Entry 25 at 5-8); (2) because USERRA amends an earlier law pre-dating the four-year statute of limitations in 28 U.S.C. § 1658, said statute of limitations does not apply to USERRA (see id. at 8-13); (3) USERRA falls into the "otherwise provided by law" exception in 28 U.S.C. § 1658(a) (see id. at 13-15); (4) a previous administrative investigation into Plaintiff's claims by the Department of Labor (the "DOL") should toll the statute of limitations (see id. at 16-19; see also Docket Entry 55 at 13-16); and (5) Plaintiff's periods of active duty service should toll the statute of limitations under 50 App. U.S.C. § 525 (see Docket Entry 55 at 13). The Court should find that the four-

year statute of limitations in 28 U.S.C. § 1658 does apply to Plaintiff's USERRA claims and that the filing of this action after the running of that four-year period renders Plaintiff's claims time-barred.

A proper analysis of these matters begins with a brief look at the history of USERRA. Congress enacted USERRA in 1994 to "clarify, simplify, and, where necessary, strengthen the existing" provisions of the Veterans' Rights Reemployment Act of 1974 (the "VRRA"), Pub. L. No. 93-508, 88 Stat. 1578 (codified at 38 U.S.C. § 2021 et seq.) (recodified at 38 U.S.C. § 4301 et seq. by the Veterans' Benefits Act of 1992, Pub. L. No. 102-568, 106 Stat. 4320), amended by USERRA, Pub. L. No. 103-353, 108 Stat. 3149 (1994).  Pub. L. No. 103-353, reprinted in 1994 U.S.C.C.A.N. 2449, 2451.  The VRRA granted certain rights to veterans upon their return to the workforce and barred employment discrimination based on a reservist's military service.  See Middleton v. City of Chicago, 578 F.3d 655, 659 (7th Cir. 2009) (citing Pub. L. No. 93-508, sec. 404, § 2021(a)(B), (b)(3), 88 Stat. 1578, 1595-96 (1974)).  However, the VRRA only provided remedies in the form of injunctive relief and lost wages and benefits.  Id.

Notably, as it relates to the statute of limitations issue, the VRRA contained a provision that "no state statute of limitations shall apply to any proceedings under this chapter." Pub. L. No. 93-508, sec. 404, § 2022 (emphasis added).  As no

applicable federal statute of limitations existed at the time, this provision effectively meant that claims brought under the VRRA lacked any time bar. Only on December 1, 1990, did Congress provide a default federal statute of limitations in 28 U.S.C. § 1658, which states as follows:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658(a). However, as the VRRA was not "enacted after the date of the enactment of" Section 1658, claims brought under its provisions remained free from the application of Section 1658.

The enactment of USERRA on October 13, 1994, changed this analysis. Congress enacted USERRA as an amendment to the VRRA, and, in doing so, expanded a plaintiff's rights. "USERRA provided claimants the opportunity to avail themselves of remedies formerly withheld under the VRRA, namely, liquidated damages and a jury trial. . . . Further, USERRA broadened the basis upon which a plaintiff . . . might successfully allege discrimination. The VRRA required [a plaintiff] to allege that discrimination was the sole factor motivating the adverse employment action, under USERRA a plaintiff need only show an improper animus was a 'motivating factor' in the employment decision." Risner v. Haines, No. 1:06 CV 1953, 2009 WL 4280734, at *6 (N.D. Ohio Nov. 24, 2009) (unpublished).

Like its predecessor, USERRA's only reference to a statute of limitations was that "[n]o State statute of limitations shall apply to any proceeding under this chapter." Pub. L. No. 103-353, § 4323(c)(6) (emphasis added). Not until Congress enacted an additional amendment to USERRA in the form of the Veterans' Benefit Improvement Act (the "VBIA"), Pub. L. No. 110-389, 122 Stat. 4145 (codified in scattered sections of 38 U.S.C.), on October 10, 2008, did Congress declare that claims brought under USERRA would lack any time bar. Specifically, the VBIA states: "If any person seeks to file a complaint or claim with the Secretary, the Merit Systems Protection Board, or a Federal or State court under this chapter alleging a violation of this chapter, there shall be no limit on the period for filing the complaint or claim." 38 U.S.C. § 4327(b).

This VBIA provision did not address the appropriate handling of statute of limitations issues for claims filed under the previous version of USERRA. See id. Given the lack of any indication that the VBIA's declaration regarding statutes of limitations would apply retroactively, the question arose as to whether claims brought under the prior version of USERRA that expired before the enactment of the VBIA in October 2008 remained subject to the four-year statute of limitations period of 28 U.S.C. § 1658. In this regard, the plain language of the version of USERRA in effect prior to the VBIA indicated only that no state

statute of limitations should apply and the plain language of 28 U.S.C. § 1658, which generally governs a civil action arising out of an Act of Congress "enacted after the date of the enactment" of Section 1658, provided for a statute of limitations. Accordingly, the ultimate question became whether USERRA was "enacted after the date of the enactment" of Section 1658 even though it amended the earlier-enacted VRRA.

The Supreme Court provided some guidance for this analysis in 2004 when it issued its opinion in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 377-380 (2004). Jones held that "a cause of action 'aris[es] under an Act of Congress enacted' after December 1, 1990 - and therefore is governed by § 1658's 4-year statute of limitations - if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." Id. at 382 (alteration in original). Accordingly, the relevant analysis focuses on "the substantive effect of an enactment - the creation of new rights of action and corresponding liabilities - not the format in which it appears in the Code." Id. at 381.

Although neither the United States Court of Appeals for the Fourth Circuit nor any United States District Court within the Fourth Circuit appear to have addressed this issue, courts that have analyzed the applicability of 28 U.S.C. § 1658 on USERRA in light of the Supreme Court's decision in Jones have held that the four-year statute of limitations attaches to claims arising prior

to the VBIA on the grounds that USERRA broadened the rights available to a plaintiff. See, e.g., Middleton, 578 F.3d at 660 ("Applying the Supreme Court's reasoning in Jones, [the plaintiff]'s current claim was 'made possible by' and 'necessarily depend[s]' on USERRA, meaning it arose under a cause of action enacted after § 1658." (citing Jones, 541 U.S. at 382, 384, 124 S. Ct. 1836)); Tully v. County of Nassau, No. 11-CV-2633(ADS)(ARL), 2012 WL 487007, at *7 (E.D.N.Y. Feb. 14, 2012) (unpublished) ("As a result, the Court agrees with those courts that have found that USERRA claims arising before the enactment of the VBIA in October 2008 were subject to the four-year limitations period in section 1658." (citations omitted)); Moore v. United Air Lines, Inc., Civil Action No. 10-cv-02100-WYD-CBS, 2011 WL 2144629, at *4 (D. Colo. May 31, 2011) (unpublished) ("I reject Plaintiff's arguments, and find that his claims are barred by the four-year limitations period in 28 U.S.C. § 1658(a) in effect when his claims accrued."); Risner, 2009 WL 4280734, at *6 ("Applying Jones in this instance indicates that [the plaintiff's] USERRA claims arise under an Act of Congress governed by § 1658.  Thus, even though the 1994 passage of USERRA was an amendment to the VRRA, Courts have unanimously followed Jones in recognizing that USERRA materially broadened the rights available to litigants, bringing USERRA within the ambit of § 1658's statute of limitations."). Given that Plaintiff relies on the broadened rights provided by USERRA (see Docket Entry 38 at 16-

18 (alleging discriminatory acts motivated "in whole or in part" by military service and requesting trial by jury (emphasis added))), the sound reasoning of the foregoing decisions warrants the conclusion that § 1658's four-year limitations period applies in this case.

A question, however, remains as to whether the four-year limitations period applicable to Plaintiff's claims ran in its entirety before the October 10, 2008 enactment of the VBIA. Under federal law, "a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Battle v. Seibels Bruce Ins. Co., 288 F.3d 596, 604 (4th Cir. 2002) (citing United States v. Kubrick, 444 U.S. 111, 122-24 (1979)). Under this standard, Plaintiff's claims accrued on January 23, 2003 - the date on which Plaintiff signed the Release explicitly providing for the termination of Plaintiff's employment with the City of Greensboro and his inability to seek reemployment (see Docket Entry 1-4).

Accordingly, absent any tolling or other exclusion of time, the four-year limitations period would have passed in January 2007, before the enactment of the VBIA and before the commencement of this action on September 29, 2009. Plaintiff asserts that: (1) Plaintiff's periods of active duty service should be excluded from calculation under the Servicemembers Civil Relief Act, 50 App. U.S.C. § 525 (see Docket Entry 55 at 13); and (2) the statute of

limitations period should be tolled by the investigation of Plaintiff's administrative claim with the DOL (see id.).

Even if the Court accepted Plaintiff's arguments, the statute of limitations period for Plaintiff's claims expired in February 2008 - nearly eight months before the VBIA came into effect. Plaintiff's claims accrued on January 23, 2003. One day passed on Plaintiff's claims before he began his first active duty tour on January 25, 2003 (see Docket Entry 55 at 11). Plaintiff then returned from his first active duty tour on June 30, 2003. (See id.) Thereafter, three years and 12 days passed before Plaintiff filed his administrative claim with the DOL on July 13, 2006 (see id. at 14), for a total of three years and 13 days. Defendants have provided evidence that Plaintiff's DOL claim was subsequently closed on March 1, 2007, "due to inactivity" (Docket Entry 51-26 at 2) and was not re-opened until December 3, 2008, and then only to examine "any USERRA right that matured after [Plaintiff's] return from [his] military leave of absence" (Docket Entry 51-27 at 2). In this interim time period (i.e., between March 1, 2007, and December 3, 2008), the remaining 352 days available to Plaintiff under § 1658 passed, resulting in the expiration of the four-year statute of limitations applicable to his instant claims on or about February 18, 2008.

Plaintiff contends that the period from March 1, 2007, to December 3, 2008, during which Plaintiff's DOL case was closed,

should not count against the running of the statute of limitations because "[t]he evidence in this case shows that in large part the DOL's investigation was undermined by the City [of Greensboro]." (Docket Entry 55 at 15.) Specifically, Plaintiff argues that:

> [T]he City [of Greensboro] maintained in their DOL USERRA response that "[Plaintiff]'s position was eliminated due to a reduction-in-force in 2002, **prior to the City of Greensboro having any knowledge that [Plaintiff] was recalled to active duty.**" [(Docket Entry 55-19 at 2)] (emphasis added). This was a very important misrepresentation in a federal investigation of this USERRA claim, because if the City [of Greensboro] did not have any notice of [Plaintiff]'s eminent return to active duty, [Plaintiff] could not show that the harassment he received was related to his military status. It is clear this was not the fact, as Covington acknowledges receiving verbal notification of recall from [Plaintiff], but cannot saw [sic] when and where it was received. [(Docket Entry 55-1 at 7-12, 18.)] . . . Delays caused by the Defendant in the DOL investigation should not be allowed to undermine [sic] when "<u>the interests of justice require vindication of plaintiff's rights,</u>" and when the tolling is consistent with clear Congressional intent. <u>Burnett [v. New York Central R. Co.,</u> 380 U.S. 424, 428-29 (1965)] (emphasis added).

(<u>Id.</u> at 15-16 (bold and underlining in original).)

However, despite Plaintiff's assertion, the record lacks any evidence that the referenced letter from the City of Greensboro "undermined" the DOL's investigation or even affected the decision by the DOL to close Plaintiff's case. Rather, the notification sent by the DOL to Plaintiff stated that it closed Plaintiff's case "due to inactivity." (<u>See</u> Docket Entry 51-26 at 2.) Moreover, a separate letter sent by the DOL dated November 18, 2008 –

apparently in response to Plaintiff's request to reopen the portion of his case dealing with his termination – stated that the DOL was "unable to reopen [Plaintiff's] USERRA claim" because Plaintiff had "signed away [his] rights under USERRA." (Docket Entry 58-2 at 3.) Without making any determination as to the correctness of the DOL's findings, the undersigned notes that neither basis for closing Plaintiff's case rests in any way on the letter sent by the City of Greensboro of which Plaintiff now complains. Plaintiff's contrary "mere unsupported speculation," Booz, Allen, 452 F.3d at 308, does not suffice to overcome a motion for summary judgment. Accordingly, no grounds exist upon which to toll the running of the statute of limitations between March 1, 2007, and December 3, 2008, and the Court should find that the four-year statute of limitations in 28 U.S.C. § 1658 bars Plaintiff's instant claims. See Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 950 (1997) ("[E]xtending a statute of limitations after the pre-existing period of limitations has expired impermissibly revives a moribund cause of action . . . ." (citation omitted)).[2]

### Plaintiff's Motion to Compel

Plaintiff has also moved the Court to compel the City of Greensboro to withdraw its objections to certain discovery requests and to submit responses to certain of Plaintiff's interrogatories

---

[2] In light of this conclusion, the Court need not address Defendants' remaining arguments for granting summary judgment.

and requests for production. (See Docket Entry 47 at 2.) Plaintiff has not contended that he requires such production to adequately respond to Defendants' Motion for Summary Judgment (see Docket Entries 47, 48, 52, 55), and, in fact, it does not appear that the production of the information requested would in any way affect the foregoing reasoning regarding the statute of limitations. Accordingly, Plaintiff's Motion to Compel Discovery should be denied as moot.

Defendants' Motion to Strike

Defendants have filed a motion asking the Court to strike portions of the Affidavit of Stephen King (Docket Entry 55-20), which Plaintiff submitted in connection with his Response Brief in Opposition to Defendants' Motion for Summary Judgment (Docket Entry 55), on the grounds that Mr. King's testimony "is not based on personal knowledge" and "is not properly notarized" (Docket Entry 56 at 1). Like Plaintiff's Motion to Compel Discovery, a determination of Defendants' Motion to Strike will have no effect on the conclusion that the statute of limitations bars Plaintiff's claims. Accordingly, said motion should be denied as moot.

Conclusion

Based on a plain reading of the relevant statutory language, as well as substantial case law, the four-year statute of limitations provided in 28 U.S.C. § 1658 applies to USERRA claims that pre-date the VBIA. Even if tolling occurred during the period

of Plaintiff's active duty and during the pendency of Plaintiff's administrative case with the DOL, four years passed after the accrual of Plaintiff's claims and before the enactment of the VBIA (and the commencement of this action). Plaintiff's only argument for tolling the statute of limitations during the period in which Plaintiff's DOL case was closed relies on "[m]ere unsupported speculation," Booz, Allen, 452 F.3d at 308, which cannot overcome the showing in Defendants' motion for summary judgment that Plaintiff's claims are time-barred. Given this conclusion, no reason exists to address Plaintiff's Motion to Compel Discovery or Defendants' Motion to Strike.

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 50) be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion to Compel Discovery (Docket Entry 47) and Defendants' Motion to Strike (Docket Entry 56) be denied as moot.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

Date: March 1, 2012